1
2                                           O
3
4
5              UNITED STATES DISTRICT COURT
6             CENTRAL DISTRICT OF CALIFORNIA
7
8                              ) Case No. CV 10-2671-JGB
   LEON THOMAS,                ) (CWx)
9                              )
                               )
10            Plaintiff,       ) **ORDER**
11      v.                     )
                               ) **[Motion filed September
12   FRANCISCO QUINTANA, et    ) 30, 2013]**
   al.,                        )
13                             )
                               )
14            Defendants.      )
                               )
15                             )
   _____ )
16
17
18
19      Before the Court is a Motion Summary Judgment
20   filed by Defendants Francisco Quintana and Bradley
21   Jurgensen. (Doc. No. 105.)  After considering the
22   papers in support of and in opposition to the motions
23   and arguments presented at the March 10, 2014 hearing,
24   the Court DENIES Defendants' Motion for Summary
25   Judgment.
26
27
28

# I.   PROCEDURAL HISTORY

Plaintiff Leon Thomas ("Plaintiff") filed a complaint against Defendants Jeffrey Allen, A.W. Jurgensen, K. Lopez, C. Zumkher, and Jeffrey Allen on April 20, 2010.  (Doc. No. 4.)  Plaintiff filed a First Amended Complaint ("FAC") on July 16, 2010 and filed a Second Amended Complaint ("SAC") on December 17, 2012 (Doc. No. 84).  The SAC alleges a Section 1983 claim for cruel and unusual punishment and deliberate indifference to medical needs in violation of the Eighth Amendment.  (Id.)  Defendant Jeffrey Allen was dismissed from the action on May 21, 2013.  (Doc. No. 97.)

On September 30, 2013, Defendants Francisco J. Quintana and Bradley Jurgensen ("Defendants") filed a Motion for Summary Judgment ("MSJ," Doc. No. 105), attaching:

- Statement of Uncontroverted Facts ("SUF," Doc. No. 105-1);
- Declaration of Francisco Quintana ("Quintana Decl.," Doc. No. 104);
- Declaration of Bradley Dean Jurgensen ("Jurgensen Decl.");
- Declaration of David Dittemore ("Dittemore Decl.");

- Declaration of Louis Sterling ("Sterling Decl.");
- Declaration of Jesus Fernandez, M.D. ("Fernandez Decl.");
- Declaration of Sarah Quist ("Quist Decl.");
- Exhibits 1-60;[1] and
- Excerpts from the Deposition of Leon Thomas ("Thomas Depo.").

On October 15, 2013, Plaintiff filed an Opposition (Doc. No. 110), attaching:

- Declaration of Leon Thomas ("Thomas Decl.," Doc. No. 110-1);
- Declaration of David Kwasniewski ("Kwasniewski Decl.," Doc. No. 110-2);
- Plaintiff's Statement of Genuine Issues ("SGI," Doc. No. 110-3); and
- Plaintiff's Objections to Declarations ("Pl. Obj.," Doc. No. 110-4).

On October 29, 2013, Defendants replied (Doc. No. 115), attaching:

- Declaration of Jesus Fernandez, M.D. ("Fernandez Decl. iso Reply," Doc. No. 115-1);
- Declaration of Russell W. Chittenden ("Chittenden Decl.," Doc. No. 115-2);

---

[1] Due to the volume of evidence filed in support of the MSJ, and the fact that the evidence has been filed under seal, the Court does not enumerate each attached Exhibit, but describes the documents in the evidentiary citations as needed.

- Excerpts of the Deposition of Leon Thomas (Doc. No. 105-3);
- Response to Plaintiff's SGI (Doc. No. 117); and
- Objections to Evidence in Opposition to MSJ ("Def. Obj.," Doc. No. 116).

On November 1, 2013, Plaintiff filed an Objection to the New Declarations of Jesus Fernandez, M.D. and Russell W. Chittenden Filed in Support of Defendants' Reply.  (Doc. No. 118.)

## II. LEGAL STANDARD[2]

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party

---

[2] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

4

bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.  Id.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252; see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as

to the material facts at issue." <u>In re Oracle</u>, 627 F.3d at 387 (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. FACTS

**A.   Evidentiary Objections**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002); <u>see</u> Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003); <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001).

Plaintiff objects to portions of the declarations filed in support of the MSJ on the basis that those

portions are irrelevant, lack foundation, are a legal
conclusion, are vague or ambiguous, are speculative,
are an improper summary, are contradicted by other
evidence, misstates the evidence, or the declarant
lacks personal knowledge.  (See generally Pl. Obj.,
Doc. No. 110-4.)  Defendants similarly object to
several portions of the Thomas Declaration as
irrelevant and lacking foundation.  (See Def. Obj.,
Doc. No. 116.)  "[O]bjections to evidence on the ground
that it is irrelevant, speculative, and/or
argumentative, or that it constitutes an improper legal
conclusion are all duplicative of the summary judgment
standard itself" and are thus "redundant" and
unnecessary to consider here.  Burch v. Regents of
Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D.
Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986)
("Factual disputes that are irrelevant or unnecessary
will not be counted.").  Thus, the Court does not
consider the objections listed above, other than those
discussed below.  These objections are challenges to
the characterization of the evidence and are improper
on a motion for summary judgment.

**Authentication**

    In her declaration, Quist states in her capacity as
Senior Attorney, she has access to BOP logs and

7

records, Exhibits 1-15 and 19-60 are records maintained in the ordinary course of business, and she has access to these records.  (Quist Decl. ¶ 4.)

Unauthenticated documents cannot be considered in a motion for summary judgment.  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir.2011) (citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir.2002)) (quotation marks omitted).  Therefore, lack of proper authentication can be an appropriate objection where a document's authenticity is genuinely in dispute.

An inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility.  Orr, 285 F.3d at 776.  Documents may be authenticated by review of their contents if they appear to be sufficiently genuine.  Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n. 24).  While Plaintiff objects to Exhibits 1-12, 19-60, prison records submitted by Defendants on the ground that they lack authentication, there is no indication in the record that these documents are not official prison records maintained in Plaintiff's prison file(s).  The characteristics of the records themselves in terms of appearance, contents, and substance allow the Court to conclude that the documents have been authenticated by their distinctive characteristics and that they are what they appear to be: official prison

records. Fed. R. Evid. 901(b)(4); <u>Las Vegas Sands, LLC</u>, 632 F.3d at 533; <u>see also</u> <u>Abdullah v. CDC</u>, No. 06-2378, 2010 WL4813572, at *3 (E.D. Cal. Nov. 19, 2010); <u>Sanchez v. Penner</u>, No. 07-0542, 2009 WL 3088331, at *5 (E.D. Cal. Sept.22, 2009); <u>Johnson v. Roche</u>, No. 06-1676, 2009 WL 720891, at *6 (E.D. Cal. Mar.13, 2009); <u>Burch</u>, 433 F.Supp.2d at 1119.  Thus, Plaintiff's objection to Exhibits 1-12, 19-60 for lack of proper authentication are overruled. Fed. R. Evid. 901(b)(4); <u>Las Vegas Sands, LLC</u>, 632 F.3d at 533.

**<u>Exhibits 13-15</u>**

    Plaintiff objects to Exhibits 13-15 on the grounds that they are not properly authenticated.  Exhibits 13-15 appear to be architectural drawings of the Federal Correctional Complex in Victorville, California. Dittemore testifies that he has been the General Foreman at the Federal Correctional Institution I ("FCI I") since May 2011, and he supervises the Facilities Department in that capacity.  In relevant part, he testifies that:

- Exhibit 13 is a copy of the architectural drawing for FCI I's Special Housing Unit ("SHU"), which depicts the cell block in which Cell 137 is located;

- Exhibit 14 is an enlarged copy of the upper left portion of Exhibit 13, which shows that Cell L127, which is labeled HC Cell, which stands for Handicap Cell; and

- Exhibit 15 is an enlarged copy of the legend in Exhibit 13.

(Dittemore Decl. ¶¶ 3-5.)  "An inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility," Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n. 24).  No suggestion was made that these documents are not architectural drawings of FCI I's SHU.  Thus, the Court overrules the objections to the admissibility of Exhibits 13-15.

Plaintiff objects to Dittemore's testimony that the cell labeled Cell L127 is now Cell 137, and Dittemore's testimony regarding the construction of Cell 137 based on the depiction of Cell L127. The Court agrees that Dittemore has not laid a foundation for the assertion that Cell L127 is now Cell 137, and he lacks the personal knowledge to testify as such since he has only held the position of General Foreman since May 2011. Defendants have not even provided evidence that supports that the unit was constructed according to these architectural drawings other than Dittemore's

unsupported statement that it is his understanding that Cell 137 was built in accordance with these plans. (<u>See</u> Dittemore Decl. ¶ 6.)

Therefore, the Court sustains Plaintiff's objections to Dittemore's testimony that Cell L127 in Exhibits 13-15 they depict Cell 137 as well as his testimony regarding the features of Cell 137 based on the depictions of Cell L127.

**<u>Exhibits 16-18</u>**

Plaintiff also objects to Exhibits 16-18 as improperly authenticated.  Exhibits 16-18 appear to be photographs of Cell 137.  The photographs are properly authenticated if the evidence is sufficient to support a finding that they are photographs of Cell 137.  <u>People of the Territory of Guam v. Ojeda</u>, 758 F.2d 403, 408 (9th Cir.1985) ("Under the Federal Rules [of Evidence 901(b)], the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question.") Dittemore testifies that Exhibit 16 is a copy of a photograph showing Cell 137's shower, Exhibit 17 is a photograph of the open door of Cell 137, and Exhibit 18 is a photograph showing the rails around the toilet in Cell 137.  (Dittemore Decl. ¶¶ 7-9.)  Thus, the Court

overrules Plaintiff's objections to the admissibility of Exhibits 16-18.

**<u>Hearsay</u>**

Plaintiff objects to several portions of the declarations of Quintana, Jurgensen, and Sterling which reference conversations they had with medical staff and other prison officials as hearsay. (<u>See, e.g.</u>, SUF ¶¶ 8, 9.) The Court sustains in part and overrules in part these objections. The Court finds that these portions may be considered as evidence that the conversations occurred and statements were made, but the Court will not consider them for the truth of the matter asserted (e.g., that specific equipment was not medically necessary).

Defendants object to almost every paragraph of Plaintiff's Declaration as hearsay. Defendants offer no argument in support of or in clarification of their objection. The majority of Plaintiff's declaration consists of statements based on his personal experiences. Paragraphs 8, 24, and 25 contain statements made to Plaintiff by Defendant Jurgensen and Doctor Fernandez. The Court grants Defendants' hearsay objections to the extent that these statements are being offered for the truth of the matter asserted, but considers them for the fact that the statements were

made.   The Court overrules the remainder of Defendants'
hearsay objections.

**Lay and Expert Opinion**

     Plaintiff objects to portions of the Jurgensen,
Dittemore, and Sterling declarations as improper lay
opinion.   These portions are largely testimony
regarding the appropriateness of Cell 137's fixtures
for handicap accessibility (e.g., Jurgensen Decl. ¶ 5B)
or whether an item was medically necessary (e.g.,
Sterling Decl. ¶ 10).   Lay witnesses may not testify on
"scientific, technical, or other specialized knowledge
within the scope of Rule 702." Fed. R. Evid. 701. The
Court agrees that those portions of the Jurgensen,
Dittemore, and Sterling declarations are improper lay
opinion as they require specialized medical knowledge
and knowledge regarding what constitutes a proper
handicap accessible cell.   Thus, the Court sustains
these objections.

     Plaintiff also objects to portions of Dr.
Fernandez's declaration that discuss the risk of
allowing inmates to have certain items in the cells as
improper expert opinion because he "does not articulate
the reliable methodology by which he arrived at this
conclusion."  (See e.g., Fernandez Decl. ¶ 60.)   The
Court does not rely on these portions of Dr.

1   Fernandez's declaration in its ruling and, therefore,

2   declines to rule on these objections.

3       Defendants object to the majority of Plaintiff's

4   declaration as being improper expert testimony, but do

5   not specify which portions they object to, and they do

6   not provide any analysis supporting their objections.

7   After a review of Plaintiff's declaration, the Court

8   finds that Plaintiff's statements regarding whether his

9   cell was adequately equipped to meet his needs is

10  improper lay testimony.  (See Thomas Decl. ¶¶ 10, 15.)

11  The Court sustains Defendants' objections to these

12  portions and overrules the remainder of Defendants'

13  objections on the grounds of improper lay testimony.

14

15  **Best Evidence**

16

17      Defendants object to several paragraphs of

18  Plaintiff's declaration as violating the best evidence

19  rule.  Again, Defendants do not offer any clarification

20  regarding which portions of the paragraphs they object

21  to for several of the paragraphs to which they object.[3]

22  The best evidence rule applies when secondary evidence

23  is offered to prove the content of a writing.  Fed. R.

24  _____

25  [3] The Court reminds the Parties that the Court need not consider "boilerplate recitations" and "blanket objections [submitted] without analysis applied to specific items of evidence," Doe v. Starbucks, Inc.,

26  No. 08-0582, 2009 WL 5183773, at *1 (C.D.Cal. Dec. 18,

27  2009), and cautions the Parties that in the future the Court may decline to consider general, blanket

28  objections in filings.

14

Evid. 1002.  "Evidence may be admitted to prove something other than the content of a writing even if documentary evidence would arguably be more persuasive."  Leicht v. Sw. Carpenters Pension Plan, No. 12-00354, 2013 WL 1729558 (C.D. Cal. Apr. 22, 2013); see also DeMinico v. Monarch Wine Co., Inc., No. 1986 WL 27578, at *3 n. 1 (C.D.Cal. Mar.12, 1986) ("[N]o evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation") (internal quotation marks omitted).  Here, Plaintiff is not attempting to prove the content of any writing. Therefore, the best evidence rule is inapplicable and the Court overrules Defendants' objections.

**New Declarations**

Plaintiff objects to portions of the Fernandez and Chittenden Declarations filed in support of Defendants' Reply as being impermissible new evidence.  (See Doc. No. 118.)  The Court does not consider the objected to testimony in its ruling.  Therefore, the Court declines to rule on these objections.

**B.   Uncontroverted Facts**

15

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the MSJ.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

This action stems from Defendants' alleged violation of Plaintiff's Eighth Amendment Rights while Plaintiff was housed in FCI I Cell 137 from August 26, 2009 to June 25, 2010.  (See generally SAC.)

Plaintiff is a federal inmate who began service of his present 235-month federal sentence in September 2000.  Plaintiff utilizes a wheelchair after having one leg amputated above the knee, and he states that he has weighed around 300 pounds for at least five years. (SUF ¶ 1; SGI ¶ 1.)  Plaintiff has a history of chronic severe back, leg, and buttocks pain.  (SGI ¶ 2.)

Plaintiff was designated to the Federal Correctional Complex in Victorville, California ("FCC Victorville") from August 14, 2008 to March 25, 2011. (SUF ¶ 4.)  FCC Victorville is comprised of four separate institutions: the high security United States Penitentiary ("USP"); medium security Federal

16

Correctional Institutions I and II ("FCI I" and "FCI II"); and the minimum security Federal Prison Camp. (<u>Id.</u> ¶ 3.)  Plaintiff was first housed at the USP from August 14, 2008 until August 26, 2009.  He was then moved from the USP Special Housing Unit ("SHU") to the FCI I SHU on August 26, 2009.  (<u>Id.</u> ¶ 5.)

Dr. Fernandez completed multiple 770 Forms to request Plaintiff's transfer to a medical center.  In September 2008, Dr. Fernandez wrote that Plaintiff's needs are that of a care level III inmate, he required physical therapy, special assistance, and cell accommodations not available in a standard U.S.P.  (SGI ¶ 7.)  In March 2009, Dr. Fernandez wrote that: Plaintiff requires special bed, bath, and ambulatory devices to assist him in sitting up and getting into his wheelchair, Plaintiff had a long history of medical center confrontations and his care level was dropped to a level that was hardly reasonable for a person with his complexities and physical needs, the trapeze Plaintiff required to manage his weight and lifting problems to move his wheelchair was unavailable, and Plaintiff used a back brace to reduce his back pain. (<u>Id.</u> ¶ 11.)

In June 2010, FCI Victorville's Clinical Director examined Plaintiff and wrote that he was examined and found with intact skin and no evidence of sores, and he

had no indication for a trapeze or back brace.  (SUF ¶ 22.)

Defendants Quintana and Jurgensen

Defendant Quintana served as the Complex Warden over FCC Victorville and the Warden at USP Victorville from October 11, 2009 until June 2, 2012.  (Id. ¶ 7.) As Complex Warden, Defendant Quintana had the overall responsibility for managing institutions at FCC Victorville.  (Id. ¶ 9.)  Defendant Quintana had final authority for administrative and operational decisions at FCC Victorville.  (Id. ¶ 10.)  As Complex Warden, Defendant Quintana conducted periodic rounds at each institution, during which he would stop at each inmate's cell to speak about any issues.  (Quintana Decl. ¶ 5.)  As Warden at USP, Defendant Quintana reviewed and signed BP-9 Administrative Remedy responses.  (Id. ¶ 6.)

Defendant Jurgensen served as the Associate Warden of Industries ("AW") at FCI I from July 20, 2008 until May 31, 2011.  (SUF ¶ 11.)  He was on medical leave from September 13, 2009 to November 2, 2009.  (Id. ¶ 12.)  Defendant Jurgensen was not generally involved in day-to-day medical decisions about, or medical supplies provided to, a particular inmate.  (Id. ¶ 13.) However, Defendant Jurgensen conducted weekly rounds to

determine if an inmate had any issue.  (Jurgensen Decl. ¶ 5.)

Plaintiff's Cell at FCI I

Plaintiff was housed in FCI I the SHU Cell 137, which was a designated handicap cell labeled "Handicapped" on its door, from August 26, 2009 until June 25, 2010.  (SUF ¶ 6.)  The Parties dispute whether Cell 137 was a handicap cell that contained all appropriate rails and devices.  Defendants present photographic evidence that at one point Cell 137 had handicap rails in the shower, around the toilet, and on the door.  (See Exs. 16-18; Dittemore Decl. ¶ 7.) Additionally, the shower in Cell 137 has a floor threshold that is approximately ¼ inch high and three inches wide, and a seat designed to be folded up. (Dittemore Decl. ¶ 7; Ex. 16.)  Defendants also provide evidence that when alterations are made to a cell, staff complete a work order, and there is no work order indicating that the Cell 137 toilet rails were installed after construction of the institution, or that there were any changes to the shower or door bars. (Dittemore Decl. ¶ 6.)  Maintenance records do not show any work orders for the repair of any broken or defective shower button in Cell 137.  (SUF ¶ 41.)

Plaintiff provides evidence through his declaration that when he was placed in Cell 137, there were no rails around the toilet, they were only installed in April 2010, and that outside shower rails and shower grab bars were never installed. (Thomas Decl. ¶¶ 16, 27.)  Plaintiff also testifies that the shower had a raised floor threshold, was not wide enough to accommodate his wheelchair, and he was not able to wheel into the shower. (Id. ¶ 18.)  Additionally, Plaintiff testifies that the lower shower button, which was reachable from the shower seat, was broken when he was transferred to Cell 137 and not fixed until June 2010, almost 10 months after he was put in Cell 137. (Id. ¶ 27.)

While Plaintiff was in Cell 137, he created a makeshift trapeze to assist with transferring himself from his bed to his wheelchair, but the makeshift trapeze constantly tore and snapped, causing him additional pain. (Id. ¶ 17.)  Plaintiff fell on multiple occasions while in Cell 137. (Id. ¶¶ 16, 18.)

Trapeze/Grab Bar

Plaintiff's medical records reflect that Dr. Fernandez recommended a trapeze for Plaintiff in September 2008, October 2008, and March 2009. (Exs. 38, 41, 45.)  Neither Dr. Fernandez nor Assistant

Health Services Administrator ("AHSA") Sterling
recommended that an inmate be allowed a trapeze in the
SHU because the benefits are outweighed by detriments,
such as a suicide risk in the SHU.  (SUF ¶ 27.)

Prior to his transfer to FCI I, Plaintiff was not
allowed to have a trapeze, but he had a grab bar over
his bed.  (SUF ¶¶ 17, 18; Thomas Decl. ¶ 9.)  Defendant
Jurgensen testifies that in August 2009, the Warden at
FCI I, Scott Holencik instructed Defendant Jurgensen
not to allow Plaintiff to have a trapeze in his cell.
He also states that when Plaintiff requested a trapeze
in December 2009, he relayed Plaintiff's request to
AHSA Sterling (because Holencik had left FCI I) who
confirmed that Plaintiff should not have a trapeze in
his cell and advised him that no trapeze was medically
necessary.  Defendant Jurgensen then advised Plaintiff
that no trapeze was medically necessary for him
according to Health Services.  (Jergensen Decl. ¶ 5D.)
Plaintiff testifies that Defendant Jurgensen told him
that he had the authority to decide whether he could
receive his medical equipment and advised that he would
not give Plaintiff the trapeze.  (Thomas Decl. ¶ 25.)

<u>Back Brace</u>

Plaintiff's medical records from September 2008,
October 2008, and March 2009 reflect that Plaintiff

required a back brace.  (Exs. 38, 41, 45.)  In Plaintiff's June 2009 medical record, medical staff concluded that he did not require a back brace.  (Ex. 36.)  Plaintiff's back brace was taken by officials other than Defendants Quintana and Jurgensen while he was still at USP Victorville.  (SUF ¶ 23.)  In March 2010, Plaintiff submitted an inmate request form asking if his back brace had come in, and Sterling wrote at the bottom of the form that the back brace was not approved by the Clinical Director because it was not medically necessary and it had plastic and metal stays which were not approved to be in the institution.  (Id. ¶ 25.)

After Plaintiff was transferred to FCI I, his back brace was never returned.  (Thomas Decl. ¶¶ 20, 27.)

Wheelchair Cushion

Plaintiff's medical records show that he had a history of gluteal chronic ulcers due to the strain of an ill-fitting wheelchair and chafing.  (See Ex. 38.)  While Dr. Fernandez testifies that he never observed gluteal ulcers on Plaintiff's buttocks which would indicate the need for a wheelchair cushion, records show that Dr. Fernandez found that Plaintiff presented stage I left gluteal ulcers due to the use of the wheelchair.  (Id.)  In March 2009, Plaintiff had a

wheelchair cushion and special shoe to minimize the risk of pressure ulcers and further deterioration of his progressive diseases.  (<u>See</u> Ex. 45; SGI ¶ 10.)

In June 2009, Dr. Fernandez ordered Plaintiff an extra wide wheelchair because his needed repairs, and Dr. Fernandez believed that the chafing he observed could be alleviated by a larger wheelchair.  (Fernandez Decl. ¶ 6L.)  After Plaintiff received the extra wide wheelchair, he did not have issues with any skin condition, including gluteal ulcers.  (SUF ¶ 28.)

Mid Level Practitioner Jimmy Elevazo examined Plaintiff in August 2009, shortly before he was transferred to FCI I; he noted that a physical examination did not show any skin lesions, ulcers, or break in the lower back, gluteal, buttocks, and rectal area.  (<u>Id.</u> ¶ 32.)

Upon Plaintiff's request, AHSA Sterling ordered Plaintiff a wheelchair cushion, and Defendant Quintana recalls that security concerns were raised due to the cushion's size, thickness, weight, and rigidity.  (<u>Id.</u> ¶ 29.)  Defendant Quintana testifies that the medical staff advised that the cushion was not medically necessary and Defendant Quintana decided that Thomas could not possess the cushion for security reasons.  (Quintana Decl. ¶ 5.)  AHSA Sterling also advised Defendant Jurgensen that the wheelchair cushion was not medically necessary and AHSA Sterling testifies that he

never observed or was complained to regarding problems that resulted from Plaintiff not having a wheelchair cushion.[4]  (SUF ¶ 31.)

Complaints to Defendants

     Plaintiff states in his declaration that he repeatedly made Defendants aware, through verbal and written communications, that he was missing medical supplies that had been previously provided to him, including his back brace, wheelchair cushion, wheelchair gloves, and trapeze (or "grab bar").  He additionally states that Defendant Jurgensen repeatedly told him that he would not allow him to have medical equipment, including his back brace and wheelchair cushion.  (Thomas Decl. ¶¶ 21-25.) Plaintiff also repeatedly told Defendant Jurgensen that he had fallen multiple times because of the lack of rails, and he was in pain as a result.  (Id. ¶ 24.)

     On November 21, 2009, Plaintiff submitted an administrative remedy form stating that his back brace and wheelchair cushion were taken away on August 13, 2009, and he was told that those items would be returned, which they had not.  Plaintiff requested a

_____

     [4] The AHSA position is an administrative position. Sterling is not permitted to act as a medical practitioner.  (Sterling Decl. ¶ 4.)

24

transfer to a medical center or care level 3 institution. (Quist Decl., Ex. A.)

Defendant Quintana states in his declaration that he does not recall Plaintiff complaining about a handicap rails in his cell, a shower button in his cell, a trapeze, wheelchair gloves, or back brace. (Quintana Decl. ¶¶ 4A-4E.) Defendant Jurgensen similarly states that Plaintiff did complain to him about not being housed in a handicap cell and a trapeze, Plaintiff did not speak to him about a shower button, wheelchair gloves, or a back brace. (Jurgensen Decl. ¶¶ 5B-5F.)

## IV. DISCUSSION

### A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because: (1) there is no evidence that Defendants acted with deliberate indifference to Plaintiff's serious medical needs since they relied on the advice of qualified medical staff in denying specific medical equipment; (2) there is no evidence that Defendant Quintana was involved in any determination regarding a trapeze or back brace; (3) there is no evidence that Defendant Jurgensen was involved in determinations regarding Plaintiff's back brace, trapeze, or shower button; and (4) Plaintiff did

not suffer any harm during his stay at FCI I.  (MSJ at 17-21.)

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).  The qualified immunity doctrine protects defendants not just from ultimate liability, but from having to litigate at all.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Id. (quoting Mitchell v. Forsyth, 472 U.S. 511 (1985)).

"A government official is entitled to qualified immunity from civil suit if, under the plaintiff's version of the facts, a reasonable official in the defendant's position could have believed that his conduct was lawful in light of clearly established law and the information the official possessed at the time the conduct occurred."  Ross v. Ortiz, No. 10-1606, 2013 WL 3923487, at *10 (C.D. Cal. July 29, 2013).  In analyzing a claim of qualified immunity, a court must examine (1) whether the facts as alleged, taken in the light most favorable to plaintiff, show that the

defendant's conduct violated a constitutional right, and (2) if a constitutional right was violated, whether, "in light of the specific context of the case," the constitutional right was so clearly established that a reasonable official would understand that what he or she was doing violated that right.  See Saucier, 533 U.S. at 201-02; see also Hope v. Pelzer, 536 U.S. 730, 739 (2002).  If no constitutional right was violated, the inquiry ends and the defendant prevails.  Saucier, 533 U.S. at 201.  Courts are not required to address the two inquiries in any particular order.  Rather, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 243 (2009).

**B.  Deliberate Indifference to Medical Needs**

"It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769,

771 (9th Cir. 1986).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing Estelle v. Gamble, 429 U.S. at 104).  The defendant must have "purposefully ignore[d] or fail[ed] to respond to a prisoner's pain or possible medical needs in order for deliberate indifference to be established."  May v. Baldwin, 109 F.3d 557, 566 (9th Cir. 1997) (internal quotation marks omitted).  "[M]ere malpractice, or even gross negligence," in the provision of medical care does not establish a constitutional violation.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." McGuckin, 974 F.2d at 1059.  The Ninth Circuit has expressly rejected the idea that prisoners are required to allege a significant physical injury in order to state a claim under the Eighth Amendment.  See, e.g., Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (stating

that "no lasting physical injury is necessary to state a cause of action" for excessive force) (citation omitted).

## 1. Plaintiff's Medical Condition

"A serious medical condition exists when the failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain." Houseman v. Smith, 2013 WL 315245 (Jan. 25, 2013 E.D. Cal. 2013) (citing Doty v. County of Lassen, 37 F.3d 540, 546 n. 3 (9th Cir. 1994)).  The medical records before the Court reflect that Plaintiff has a history of chronic severe back, leg, and buttocks pain that have presented a serious medical need, and Plaintiff required specialized cell accommodations for his conditions.  He was regularly treated and was provided with medical equipment prior to his time in Cell 137.  (SGI ¶¶ 2, 7, 11.)  See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.") (citing Wood, 900 F.2d at 1337-4 and Hunt v. Dental Dep., 865 F.2d 198, 200-01 (9th Cir. 1989), overruled

on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).

Defendants do not argue that Plaintiff did not have a serious medical condition.  Instead, Defendants argue that "Plaintiff cannot demonstrate that he needed any item, any type of cell, or any treatment that he did not receive." (Reply at 11.)  The Court finds that, viewing the evidence in the light most favorable to Plaintiff, the record before the Court demonstrates that there is a genuine dispute of material fact regarding whether Plaintiff received the medical equipment and cell he needed for his medical conditions.

Plaintiff's Cell

Defendants do not dispute that Plaintiff required an appropriately equipped handicap cell.[5]  Defendants have presented photos showing that Cell 137 had handicap rails in the shower, around the toilet, and on the door at one point, Defendants have provided no evidence regarding the time these photos were taken. (See Exs. 16-18; Dittemore Decl. ¶ 7.)  It is uncontroverted that Cell 137 was designated as a handicap cell while Plaintiff was housed there, and there is evidence that no work order reflects that

_____

[5] The Court notes that neither Party has presented the Court with evidence regarding the dimensions and structural features of a proper handicap cell.

these items were installed in Cell 137 after its
construction, which suggests that it has contained the
rails in the shower, around the toilet, and on the
door.  (SUF ¶ 6, Dittemore Decl. ¶ 6, Exs. 16-18.)
However, Plaintiff testifies that the handicap rails
around the toilet were only added months into his
transfer to Cell 137 and he fell in the shower while
housed in Cell 137.  (Thomas Decl. ¶¶ 16, 27.)
Defendants do not dispute that Cell 137 does not have
rails outside the shower or grab bars that would assist
him in transferring from his wheelchair to the shower
seat. Additionally, Plaintiff presents evidence that
the lower shower button did not function for most of
the time he was housed in Cell 137, and the floor
threshold was too high and the width of the shower was
too narrow to provide proper access to the shower.
(Id. ¶¶ 18, 19.)  The Court finds that Plaintiff's
evidence raises a genuine dispute as to whether he was
provided with a cell with the necessary handicap
features.

Trapeze/Ambulatory Device

    Plaintiff argues that he required a trapeze or
another ambulatory device to assist him to sit up and
get into his wheelchair while he was in Cell 137.
Defendants contend that a trapeze was not medically
necessary for Plaintiff.  (MSJ at 7.)

31

While Defendants focus on whether Plaintiff specifically required a trapeze, the central question here is actually whether Plaintiff required and was denied a medical device that addressed the needs that a trapeze was necessary to address (i.e., to manage his weight and lifting problems to move to his wheelchair). In September 2008, Dr. Fernandez determined that Plaintiff needed a trapeze, but Plaintiff received a grab bar above his bed as a functional equivalent of the trapeze. (Thomas Decl. ¶ 9; Ex. 38.) There is no evidence in the record that Plaintiff was no longer in need of an ambulatory device, until June 2010, when Dr. Ortiz determined that, at that point, there was no indication that Plaintiff required a trapeze. Particularly in light of the fact that the undisputed evidence shows that Plaintiff was 300 pounds and used a wheelchair while in Cell 137, the Court cannot find that Plaintiff did not need a trapeze or other ambulatory device during the majority of his time in Cell 137.

Back Brace

Defendants assert that they did not deny Plaintiff a back brace because he did not possess one when he arrived at FCI I, and medical staff had determined that a back brace was not medically necessary for Plaintiff. (MSJ 7-9.) Prior to Plaintiff's transfer to Cell 137,

Dr. Fernandez authorized a back brace and Plaintiff
utilized one. (Exs. 38, 41, 45.) While in Plaintiff was
housed in the USP, the metal stays from Plaintiff's
back brace were removed according to policy.  (Ex. 41.)
Again, Plaintiff's available medical records for a
large portion of his stay in Cell 137 show that he
required a back brace to reduce his back pain.  The
first record that suggests that he did not need a back
brace was March 2010.  (See Ex. 20.)

Wheelchair Cushion

     Plaintiff's medical records reflect that he has had
a history of gluteal ulcers and sores due to an ill-
fitting wheelchair, and he used a wheelchair cushion
before his transfer to Cell 137.  Defendants argue that
Plaintiff did not require a wheelchair cushion because
Plaintiff was provided with an extra-wide wheelchair,
which alleviated the symptoms that the cushion would
have assisted with.  (MSJ at 10.)  AHSA Sterling
testifies that he advised Defendant Jurgensen that a
wheelchair cushion was not medically necessary.
(Sterling ¶ 9.) However, AHSA Sterling ordered
Plaintiff a wheelchair cushion for his extra-wide
wheelchair, which was ultimately not given to
Plaintiff.  (Sterling Decl. ¶ 8.)  This creates a
material dispute as to whether Plaintiff needed a

cushion or other accommodation to alleviate any skin conditions.

Therefore, the Court finds that the record demonstrates an issue of fact regarding whether Plaintiff was provided with the necessary accommodations and medical equipment while he was housed in Cell 137.

### 2. Defendant's Response to Plaintiff's Condition

Plaintiff's Complaints to Defendants

"Prison administrators . . . are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help." Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).  As an initial matter, both Defendants state that they did not speak with Plaintiff regarding specific accommodations in his cell or equipment Plaintiff alleges they did not provide him with.  Defendant Quintana attests that he does not recall Plaintiff speaking with him about accommodations in his cell, a trapeze, back brace. (Quintana Decl. ¶¶ 5A-5E.)  Defendant Jurgensen attests that he does not recall Plaintiff speaking to him about wheelchair gloves or a back brace.  (Jurgensen Decl. ¶¶ 5E, 5F.)  Plaintiff testifies that he made Defendants

aware of these complaints personal conversations and several Administrative Remedy Requests. (Thomas Decl. ¶¶ 21-25.) Therefore, there is a genuine dispute regarding whether Defendants knew of Plaintiff's complaints and the Court proceeds to address the alleged denial of handicap accommodations and assistance devices with respect to both Defendants.

Plaintiff's Cell

As discussed above, there is a genuine dispute as to whether Plaintiff had the necessary handicap accommodations in Cell 137 and as to whether both Defendants knew of Plaintiffs complaints regarding his cell. (See Section IV.B.1; Thomas Decl. ¶¶ 21, 23.) Plaintiff also presents evidence that Defendant Jurgensen told him he would not allow proper rails to be installed in Cell 137. (Thomas Decl. ¶ 25.) Because it is undisputed that Plaintiff required proper handicap accommodations in his cell, the Court finds that a reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's needs regarding his cell, given his medical history and complaints.

Trapeze/Grab Bar

Defendants do not dispute that they did not provide Plaintiff with a trapeze, grab bar, or other ambulatory device. Defendants argue that they did not make the

decision to deny Plaintiff a trapeze and, therefore, did not purposefully ignore Plaintiff's personal needs since: (1) the FCI I Warden determined that Plaintiff could not have a trapeze before he was transferred, and (2) AHSA Sterling told Defendant Jurgensen in December 2009 that he did not believe Plaintiff needed a trapeze for any medical reasons.  However, as discussed above, the central issue is whether Defendants denied Plaintiff a trapeze or functional equivalent. Defendants have only presented evidence that the FCI I Warden determined that Plaintiff should not have a trapeze in his cell in the SHU.  (Jurgensen Decl. ¶ 5.) There is no evidence that the FCI I Warden addressed whether Plaintiff should be allowed to have any other functional equivalents.  Although AHSA Sterling told Jurgensen that he did not believe that Plaintiff had a medical need for a trapeze, ASHA Sterling was not permitted to act as a medical practitioner.  (Sterling Decl. ¶¶ 4, 15.)  Compare with Bond v. Aguinaldo, 228 F.Supp.2d 918, 920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals."). Furthermore, ASHA Sterling testifies he would have advised staff that a trapeze was not medically necessary for Plaintiff based upon an

examination conducted by Dr. Ortiz.  However, Dr. Ortiz's examination was conducted in June 2010, months after the date Defendant Jurgensen testifies that ASHA told him a trapeze was not medically necessary. (Sterling Decl. ¶ 15; Ex. 36.)  Therefore, there is a genuine dispute of material fact as to whether Defendant Jurgensen relied on ASHA Sterling's recommendation at all.

Back Brace and Wheelchair Cushion

Defendants similarly argue that even if Plaintiff needed a back brace and wheelchair cushion, they were not deliberately indifferent in not providing those items to Plaintiff because they relied on the advice of medical staff.  However, the medical opinion that Defendants purportedly relied on regarding the back brace was from months into his time in Cell 137, and it is unclear when ASHA Sterling advised that Plaintiff did not need a wheelchair cushion.

This case is similar to Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998), in which the Ninth Circuit found that slippery floors could constitute a condition of deliberate indifference. In Frost, a handicapped inmate alleged that the failure of jail officials to take reasonable measures to guarantee his safety violated the Eighth Amendment.  The Ninth Circuit found

37

that the plaintiff's repeated injuries caused by slipping in a cell that did not have a shower accessible for handicapped inmates violated the Eighth Amendment.  Here, Plaintiff is handicapped, there is evidence that he suffered repeated injuries and had serious medical conditions which would be exacerbated without the use of assistance devices that were not provided, and there is evidence that Defendants knew of those injuries and conditions.  See also Peralta v. Dillard, 744 F.3d 1076, 1085-86 (9th Cir. 2014) ("[A] prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he 'knowingly fail[s] to respond to an inmate's requests for help.'") (quoting Jett, 439 F.3d at 1098).

Therefore, viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's medical needs. Thus, the Court cannot find that Defendants are entitled to qualified immunity based on the record before it.

**V.   CONCLUSION**

1

2        For the foregoing reasons, the Court DENIES

3   Defendants' Motion for Summary Judgment.

4

5

6   Dated:   October 22, 2014      _____

7                                     Jesus G. Bernal
                                United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28